# Section 230 of the Communications Decency Act

From Wikipedia, the free encyclopedia

**Section 230** of the Communications Decency Act of 1996 (a common name for Title V of the Telecommunications Act of 1996) is a landmark piece of Internet legislation in the United States, codified at 47 U.S.C. § 230 (http://www.law.cornell.edu/uscode/47/230.html). Section 230(c)(1) provides immunity from liability for providers and users of an "interactive computer service" who publish information provided by others:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

In analyzing the availability of the immunity offered by this provision, courts generally apply a three-prong test. A defendant must satisfy each of the three prongs to gain the benefit of the immunity:

1. The defendant must be a "provider or user" of an "interactive computer service."
2. The cause of action asserted by the plaintiff must "treat" the defendant "as the publisher or speaker" of the harmful information at issue.
3. The information must be "provided by another information content provider," i.e., the defendant must not be the "information content provider" of the harmful information at issue.

## Contents

- 1 History
- 2 Limits
- 3 Controversy
- 4 Case law
    - 4.1 Defamatory information
    - 4.2 False information
    - 4.3 Sexually explicit content and minors
    - 4.4 Discriminatory housing ads
    - 4.5 Threats
- 5 Executive Order 13636
- 6 Legislation in other countries
    - 6.1 European Union
    - 6.2 Australia
    - 6.3 New Zealand
    - 6.4 France
    - 6.5 Germany
    - 6.6 United Kingdom
- 7 References
- 8 External links

# History

Section 230 of the Communications Decency Act was not part of the original Senate legislation, but was added in conference with the House of Representatives, where it had been separately introduced by Representatives Christopher Cox (R-CA) and Ron Wyden (D-OR) as the Internet Freedom and Family Empowerment Act and passed by a near-unanimous vote on the floor.[citation needed] Unlike the more controversial anti-indecency provisions which were later ruled unconstitutional,[citation needed] this portion of the Act remains in force, and enhances free speech by making it unnecessary for ISPs and other service providers to unduly restrict customers' actions for fear of being found legally liable for customers' conduct. The act was passed in part in reaction to the 1995 decision in *Stratton Oakmont, Inc. v. Prodigy Services Co.*,[1] which suggested that service providers who assumed an editorial role with regard to customer content, thus became publishers, and legally responsible for libel and other torts committed by customers. This act was passed to specifically enhance service providers' ability to delete or otherwise monitor content without themselves becoming publishers. In *Zeran v. America Online, Inc.*, the Court notes that "Congress enacted § 230 to remove the disincentives to self-regulation created by the *Stratton Oakmont* decision.[2] Under that court's holding, computer service providers who regulated the dissemination of offensive material on their services risked subjecting themselves to liability, because such regulation cast the service provider in the role of a publisher.[citation needed] Fearing that the specter of liability would therefore deter service providers from blocking and screening offensive material, Congress enacted § 230's broad immunity "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." [citation needed] In addition, *Zeran* notes "the amount of information communicated via interactive computer services is . . . staggering. The specter of tort liability in an area of such prolific speech would have an obviously chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect."[citation needed]

## Limits

Section 230's coverage is not complete: it excepts federal criminal liability and intellectual property law.[3] In *Perfect 10, Inc. v. CCBill LLC*,[4] the Court of Appeals ruled that the exception for intellectual property law applies only to federal intellectual property law, reversing a district court ruling that the exception applies to state right of publicity claims.[5] The *Friendfinder* court specifically discussed and rejected the Ninth Circuit's reading of "intellectual property law" in *CCBill* and held that the immunity does not reach state right of publicity claims.[citation needed]

## Controversy

Section 230 is controversial because several courts have interpreted it as providing complete immunity for ISPs with regard to the torts committed by their users over their systems. *See, e.g., Zeran v. AOL*, 129 F.3d 327, 330 (4th Cir. 1997), cert. denied, 524 U.S. 937 (1998), which held that Section 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." This rule effectively protects online entities, including user-generated content websites, that qualify as a "provider or user" of an "interactive computer service." However some criticize Section 230 for leaving victims with no hope of relief where the true tortfeasors cannot be

identified or are judgment proof. For example, the plaintiff in Zeran was allegedly defamed by an unidentified user of AOL's bulletin board, but was unable to bring suit against the original poster due to missing records. Since Section 230 barred Zeran from obtaining damages from AOL, he obtained no redress for the harms the messages caused, including death threats that required the involvement of the FBI.

# Case law

### Defamatory information

- *Zeran v. AOL*, 129 F.3d 327 (4th Cir. 1997).[6]

Immunity was **upheld** against claims that AOL unreasonably delayed in removing defamatory messages posted by third party, failed to post retractions, and failed to screen for similar postings.

- *Blumenthal v. Drudge*, 992 F. Supp. 44, 49-53 (D.D.C. 1998).[7]

The court **upheld** AOL's immunity from liability for defamation. AOL's agreement with the contractor allowing AOL to modify or remove such content did not make AOL the "information content provider" because the content was created by an independent contractor. The Court noted that Congress made a policy choice by "providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others."

- *Carafano v. Metrosplash.com*, 339 F.3d 1119 (9th Cir. 2003).[8]

The court **upheld** immunity for an Internet dating service provider from liability stemming from third party's submission of a false profile. The plaintiff, Carafano, claimed the false profile defamed her, but because the content was created by a third party, the website was immune, even though it had provided multiple choice selections to aid profile creation.

- *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003).[9]

Immunity was **upheld** for a website operator for distributing an email to a listserv where the plaintiff claimed the email was defamatory. Though there was a question as to whether the information provider intended to send the email to the listserv, the Court decided that for determining the liability of the service provider, "the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception of those intentions or knowledge." The Court found immunity proper "under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other 'interactive computer service'."

- *Green v. AOL*, 318 F.3d 465 (3rd Cir. 2003).[10]

The court **upheld** immunity for AOL against allegations of negligence. Green claimed AOL failed to adequately police its services and allowed third parties to defame him and inflict intentional emotional distress. The court rejected these arguments because holding AOL negligent in promulgating harmful content would be equivalent to holding AOL "liable for decisions relating to the monitoring, screening, and deletion of content from its network -- actions quintessentially related to a publisher's role."

- *Barrett v. Rosenthal*, 40 Cal. 4th 33 (2006).[11]

Immunity was *upheld* for an individual internet user from liability for republication of defamatory statement on a listserv. The court found the defendant to be a "user of interactive computer services" and thus immune from liability for posting information passed to her by the author.

- *MCW, Inc. v. badbusinessbureau.com(RipOff Report/Ed Magedson/XCENTRIC Ventures LLC)* 2004 WL 833595, No. Civ.A.3:02-CV-2727-G, (N.D. Tex. April 19, 2004).[12]

The court *rejected* the defendant's motion to dismiss on the grounds of Section 230 immunity, ruling that the plaintiff's allegations that the defendants wrote disparaging report titles and headings, and themselves wrote disparaging editorial messages about the plaintiff, rendered them information content providers. The Web site, www.badbusinessbureau.com, allows users to upload "reports" containing complaints about businesses they have dealt with.

- *Hy Cite Corp. v. badbusinessbureau.com (RipOff Report/Ed Magedson/XCENTRIC Ventures LLC)*, 418 F. Supp. 2d 1142 (D. Ariz. 2005).[13]

The court *rejected* immunity and found the defendant was an "information content provider" under Section 230 using much of the same reasoning as the *MCW* case.

## False information

- *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (2002).[14]

eBay's immunity was *upheld* for claims based on forged autograph sports items purchased on the auction site.

- *Ben Ezra, Weinstein & Co. v. America Online*, 206 F.3d 980, 984-985 (10th Cir. 2000), cert. denied, 531 U.S. 824 (2000).[15]

Immunity for AOL was *upheld* against liability for a user's posting of incorrect stock information.

- *Goddard v. Google, Inc.*, C 08-2738 JF (PVT), 2008 WL 5245490, 2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008).[16]

Immunity *upheld* against claims of fraud and money laundering. Google was not responsible for misleading advertising created by third parties who bought space on Google's pages. The court found the creative pleading of money laundering did not cause the case to fall into the crime exception to Section 230 immunity.

- *Milgram v. Orbitz Worldwide, LLC*, ESX-C-142-09 (N.J. Super. Ct. Aug. 26, 2010).[17]

Immunity for Orbitz and CheapTickets was *upheld* for claims based on fraudulent ticket listings entered by third parties on ticket resale marketplaces.

## Sexually explicit content and minors

- *Doe v. America Online*, 783 So. 2d 1010, 1013-1017 (Fl. 2001),[18] cert. denied, 122 S.Ct. 208 (2000)

The court *upheld* immunity against state claims of negligence based on "chat room marketing" of obscene photographs of minor by a third party.

- *Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684, 692 (2001)[19]

The California Court of Appeal *upheld* the immunity of a city from claims of waste of public funds, nuisance, premises liability, and denial of substantive due process. The plaintiff's child downloaded pornography from a public library's computers which did not restrict access to minors. The court found the library was not responsible for the content of the internet and explicitly found that section 230(c)(1) immunity covers governmental entities and taxpayer causes of action.

- *Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008) [20]

The court *upheld* immunity for a social networking site from negligence and gross negligence liability for failing to institute safety measures to protect minors and failure to institute policies relating to age verification. The Does' daughter had lied about her age and communicated over MySpace with a man who later sexually assaulted her. In the court's view, the Does' allegations, were "merely another way of claiming that MySpace was liable for publishing the communications."

- *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. Oct. 20, 2009)[21]

The court *upheld* immunity for Craigslist against a county sheriff's claims that its "erotic services" section constituted a public nuisance because it caused or induced prostitution.

## Discriminatory housing ads

- *Chicago Lawyers' Committee For Civil Rights Under Law, Inc. v. Craigslist, Inc.* 519 F.3d 666 (7th Cir. 2008).[22]

The court *upheld* immunity for Craigslist against Fair Housing Act claims based on discriminatory statements in postings on the classifieds website by third party users.

- *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (*en banc*).[23]

The Ninth Circuit Court of Appeals *rejected* immunity for the Roommates.com roommate matching service for claims brought under the federal Fair Housing Act[24] and California housing discrimination laws.[25] The court concluded that the manner in which the service elicited information from users concerning their roommate preferences (by having dropdowns specifying gender, presence of children, and sexual orientation), and the manner in which it utilized that information in generating roommate matches (by eliminating profiles that did not match user specifications), the matching service created or developed the information claimed to violate the FHA, and thus was responsible for it as an "information content provider." The court *upheld* immunity for the descriptions posted by users in the "Additional Comments" section because these were entirely created by users.

## Threats

- *Delfino v. Agilent Technologies*, 145 Cal. App. 4th 790 (2006), cert denied, 128 S. Ct. 98 (2007).

A California Appellate Court unanimously **upheld** immunity from state tort claims arising from an employee's use of the employer's e-mail system to send threatening messages. The court concluded that an employer that provides Internet access to its employees qualifies as a "provider . . . of an interactive service."

# Executive Order 13636

- Pursuant to Executive Order 13636, issued on February 12, 2013,[26] and online legal interpretation thereon,[27] internet companies, webhosts, and websites should act now to protect themselves from losses, including examining their insurance portfolios to ensure that adequate insurance coverage currently exists. If a company does not have stand-alone coverage for cyber risk, companies should highly consider acquiring cyberliability policies that can protect against either third-party or first-party losses, or both.

Third-party cybersecurity insurance policies may provide coverage for: liability for permitting access to identifying information of customers; transmitting a computer virus or malware to a third-party customer or business partner; failing to notify a third party of their rights under the relevant regulations in the event of a security breach; and potential "advertising injury," i.e., harms through the use of electronic media, such as unauthorized use or infringement of copyrighted material, as well as libel, slander, and defamation claims. Furthermore, first-party cybersecurity insurance policies may provide coverage for: the costs of providing notice to individuals whose identifying information was compromised; the costs associated with determining the scope of the breach and taking steps to stop the breach; public relations services to counteract the negative publicity that can be associated with a data investigation; the costs of responding to government investigations; the costs of replacing damaged hardware or software; the costs of responding to parties vandalizing the company's electronic data; and business interruption costs.

Moreover, with the imposition of this Executive Order, there likely will be increasing private litigation against companies that experience a cybersecurity incident, with the potential for significant losses resulting from governmental fines or damages awarded in litigation.

# Legislation in other countries

### European Union

Directive 2000/31/EC (http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32000L0031:EN:HTML) establishes a safe haven regime for hosting providers:

- Article 14 establishes that hosting providers are not responsible for the content they host as long as (1) the acts in question are neutral intermediary acts of a mere technical, automatic and passive capacity; (2) they are not informed of its illegal character, and (3) they act promptly to remove or disable access to the material when informed of it.
- Article 15 precludes member states from imposing general obligations to monitor hosted content for potential illegal activities.

## Australia

In *Dow Jones & Company Inc v Gutnick*,[28] the High Court of Australia treated defamatory material on a server outside Australia as having been published in Australia when it is downloaded or read by someone in Australia.

*Gorton v Australian Broadcasting Commission & Anor* (1973) 1 ACTR 6

Under the *Defamation Act 2005* (NSW),[29] s 32, a defence to defamation is that the defendant neither knew, nor ought reasonably to have known of the defamation, and the lack of knowledge was not due to the defendant's negligence.

## New Zealand

Failing to investigate the material or to make inquiries of the user concerned may amount to negligence in this context: *Jensen v Clark* [1982] 2 NZLR 268.

## France

Directive 2000/31/CE was transposed into the LCEN law. Article 6 of the law establishes safe haven for hosting provider as long as they follow certain rules.

In LICRA vs. Yahoo!, the High Court ordered Yahoo! to take affirmative steps to filter out Nazi memorabilia from its auction site. Yahoo!, Inc. and its then president Timothy Koogle were also criminally charged, but acquitted.

## Germany

In 1997, Felix Somm, the former managing director for CompuServe Germany, was charged with violating German child pornography laws because of the material CompuServe's network was carrying into Germany. He was convicted and sentenced to two years probation on May 28, 1998.[30] He was cleared on appeal on November 17, 1999.[31]

The Oberlandesgericht (OLG) Cologne, an appellate court, found that an online auctioneer does not have an active duty to check for counterfeit goods (Az 6 U 12/01).[32]

In one example, the first-instance district court of Hamburg issued a temporary restraining order requiring message board operator Universal Boards to review all comments before they can be posted to prevent the publication of messages inciting others to download harmful files. The court reasoned that "the publishing house must be held liable for spreading such material in the forum, regardless of whether it was aware of the content."[33]

## United Kingdom

The laws of libel and defamation will treat a disseminator of information as having "published" material posted by a user and the onus will then be on a defendant to prove that it did not know the publication was defamatory and was not negligent in failing to know: *Goldsmith v Sperrings Ltd* (1977) 2 All ER 566;

*Vizetelly v Mudie's Select Library Ltd* (1900) 2 QB 170; *Emmens v Pottle & Ors* (1885) 16 QBD 354;

# References

1. ^ *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 31063/94, 1995 WL 323710, 1995 N.Y. Misc. LEXIS 712 (http://w2.eff.org/legal/cases/Stratton_Oakmont_Porush_v_Prodigy/stratton-oakmont_porush_v_prodigy_et-al.decision) (N.Y. Sup. Ct. 1995).
2. ^ Zeran v. Am. Online, Inc., 129 F.3d 327, 331 (4th Cir. 1997)
3. ^ 47 U.S.C. §§ 230(e)(1) (criminal) and (e)(2) (intellectual property); see also *Gucci America, Inc. v. Hall & Associates*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001) (no immunity for contributory liability for trademark infringement).
4. ^ 481 F.3d 751 (9th Cir. Mar. 29, 2007; amended opinion issued May 31, 2007).
5. ^ *Cf. Carfano*, 339 F.3d 1119 (dismissing, inter alia, right of publicity claim under Section 230 without discussion). *But see Doe v. Friendfinder Network, Inc.*, 540 F.Supp.2d 288 (D.N.H. 2008) (230 does not immunize against state IP claims, including right of publicity claims).
6. ^ *Zeran v. AOL* (http://pacer.ca4.uscourts.gov/opinion.pdf/971523.P.pdf), 129 F.3d 327 (4th Cir. 1997).
7. ^ *Blumenthal v. Drudge* (http://cyber.law.harvard.edu/property00/jurisdiction/blumenthal.html), 992 F. Supp. 44, 49-53 (D.D.C. 1998).
8. ^ *Carafano v. Metrosplash.com* (http://www.ca9.uscourts.gov/ca9/newopinions.nsf/23FE0B8E8A5093C188256D810068FB6F/%24file/0255658.pdf), 339 F.3d 1119 (9th Cir. 2003).
9. ^ *Batzel v. Smith* (http://bulk.resource.org/courts/c/F3/333/333.F3d.1018.01-56556.01-56380.html), 333 F.3d 1018 (9th Cir. 2003).
10. ^ *Green v. AOL* (http://bulk.resource.org/courts/c/F3/318/318.F3d.465.01-1120.html), 318 F.3d 465 (3rd Cir. 2003).
11. ^ *Barrett v. Rosenthal* (http://www.casp.net/cases/Barrett%20v.%20Rosenthal.html), 40 Cal. 4th 33 (2006).
12. ^ *MCW, Inc. v. badbusinessbureau.com, L.L.C.* (http://www.citmedialaw.org/sites/citmedialaw.org/files/2004-04-19-District%20Court%20Opinion.pdf) 2004 WL 833595, No. Civ.A.3:02-CV-2727-G, (N.D. Tex. April 19, 2004).
13. ^ *Hy Cite Corp. v. badbusinessbureau.com*, 418 F. Supp. 2d 1142 (http://www.citmedialaw.org/sites/citmedialaw.org/files/2005-12-27-Hy%20Cite%20v.%20Badbusinessbureau%20Order.pdf) (D. Ariz. 2005).
14. ^ *Gentry v. eBay, Inc.* (http://w2.eff.org/legal/ISP_liability/CDA230/grace_v_ebay_1.pdf), 99 Cal. App. 4th 816, 830 (2002).
15. ^ *Ben Ezra, Weinstein & Co. v. America Online* (http://bulk.resource.org/courts.gov/c/F3/206/206.F3d.980.99-2068.html), 206 F.3d 980 (10th Cir. 2000).
16. ^ *Goddard v. Google, Inc.* (http://docs.justia.com/cases/federal/district-courts/california/candce/5:2008cv02738/203854/48/), C 08-2738 JF (PVT), 2008 WL 5245490, 2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008).
17. ^ *Milgram v. Orbitz Worldwide, LLC* (http://www.scribd.com/doc/37008339/Milgram-v-Orbitz), ESX-C-142-09 (N.J. Super. Ct. Aug. 26, 2010).
18. ^ *Doe v. America Online* (http://www2.bc.edu/~herbeck/cyberlaw.janedoe.html), 783 So. 2d 1010 (Fl. 2001)
19. ^ *Kathleen R. v. City of Livermore* (http://www.techlawjournal.com/courts/kathleenr/20010306op.asp), 87 Cal. App. 4th 684 (2001)
20. ^ *Doe v. MySpace* (http://www.ca5.uscourts.gov/opinions%5Cpub%5C07/07-50345-CV0.wpd.pdf), 528 F.3d 413 (5th Cir. 2008)
21. ^ *Dart v. Craigslist* (http://pub.bna.com/eclr/dartvcraigslist.pdf), 665 F. Supp. 2d 961 (N.D. Ill. Oct. 20, 2009).
22. ^ Chicago Lawyers' Committee For Civil Rights Under Law, Inc. v. Craigslist, Inc. (http://www.eff.org/legal/cases/clc_v_craigslist/craigslist_decision.pdf) 519 F.3d 666 (7th Cir. 2008).
23. ^ *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC* (http://www.ca9.uscourts.gov/datastore/opinions/2008/04/02/0456916.pdf), 521 F.3d 1157 (9th Cir. 2008) (*en banc*).
24. ^ 42 U.S.C. § 3604(c) (http://www4.law.cornell.edu/uscode/42/3604.html).
25. ^ Cal. Gov. Code § 12955 (http://info.sen.ca.gov/cgi-bin/displaycode?section=gov&group=12001-13000&file=12955-12956.2).

26. ^ See Executive Order – Improving Critical Infrastructure Cybersecurity, http://www.whitehouse.gov/the-press-office/2013/02/12/executive-order-improving-critical-infrastructure-cybersecurity
27. ^ http://www.jdsupra.com/legalnews/insurance-cybersecurity-regulations-wh-35583/
28. ^ *Dow Jones & Company Inc v Gutnick*, Aust Torts Reports ¶81-682, (2003) (http://www.kentlaw.edu/perritt/courses/civpro/Dow%20Jones%20&%20Company%20Inc_%20v%20Gutnick%20%5B2002%5D%20HCA%2056%20(10%20December%2002).htm)
29. ^ *Defamation Act 2005* (http://www.austlii.edu.au/au/legis/nsw/consol_act/da200599/)
30. ^ http://www.gseis.ucla.edu/iclp/fsomm.html http://www.kuner.com/data/reg/somm.html
31. ^ http://www.digital-law.net/somm/commentary.html http://news.bbc.co.uk/1/hi/world/europe/524951.stm
32. ^ http://www.heise.de/newsticker/BGH-Online-Auktionshaeuser-muessen-Angebote-von-Plagiaten-sperren--/meldung/45495
33. ^ http://www.heise.de/english/newsticker/news/67029

- 47 U.S.C. § 230 (http://www.law.cornell.edu/uscode/47/230.html)
- Margaret Jane Radin et al., *Internet Commerce: The Emerging Legal Framework* 1091-1136 (2nd ed. 2006)
- The Universal Declaration of Human Rights - Article 12
- International Covenant on Civil and Political Rights - Article 17 (1), (2)
- U.S. reservations, declarations, and understandings, International Covenant on Civil and Political Rights, 138 Cong. Rec. S4781-01 (daily ed., April 2, 1992). (http://www1.umn.edu/humanrts/usdocs/civilres.html) Section II (5)

## External links

- Full text of the Telecommunications Act of 1996 (http://www.fcc.gov/Reports/tcom1996.txt).
- Citizen Media Law Project's primer on Section 230 (http://www.citmedialaw.org/legal-guide/immunity-online-publishers-under-communications-decency-act)
- Cybertelecom :: The Communications Decency Act (http://www.cybertelecom.org/cda/cda-up.htm)
- Electronic Frontier Foundation FAQ (http://www.eff.org/bloggers/lg/faq-230.php) on Section 230
- Kenneth Zeran Commentary (http://www.kennethzeran.com/zeran_sec_230_commentary.html)
- Wikimania 2006: Section 230: At the Gates between Liability for Harmful Speech and Wikipedia (http://wikimania2006.wikimedia.org/wiki/Archives#Section_230:_At_the_Gates_between_Liability_for_Harmful_Speech_and_Wikipedia) audio lecture.

Retrieved from "http://en.wikipedia.org/w/index.php?title=Section_230_of_the_Communications_Decency_Act&oldid=565344038"
Categories: United States federal computing legislation | 1996 in law

---

- This page was last modified on 22 July 2013 at 15:43.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy.
Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.